UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN THE MATTER OF THE PETITION OF
D'ONOFIO GENERAL CONTRACTOR CORP,
AS OWNER OF THE M/V LUCIE JO FOR
EXONERATION FROM AND LIMITATION OF
LIABILITY.
-------------------------------------------------------------X
D'ONOFIO GENERAL CONTRACTOR CORP.,

                    Petitioner,

               -against-

EDWARD SAFER, JR.,

                   Respondent.
-------------------------------------------------------------X

**MEMORANDUM AND**
**ORDER**
16 CV 4025 (CLP)

**POLLAK**, United States Magistrate Judge:

On September 10, 2015, Edward Safer, the captain and sole member of the crew of the

Vessel M/V LUCIE JO (the "Vessel"), suffered an injury to his left knee while working on board

the Vessel.  As a Jones Act seaman under federal maritime law, Mr. Safer brought suit in Kings

County Supreme Court against his employer and the owner of the Vessel, D'Onofrio General

Contractor ("D'Onofrio"), claiming that he was entitled to receive maintenance and cure

benefits.  He also brought claims against Avitus,[1] a co-employer at the time of the injury.  On

October 17, 2017, D'Onofrio filed an admiralty action in this Court, seeking limitation of or

exoneration from vessel owner liability pursuant to the Limitation of Liability Act, 46 U.S.C. §§

30501-30512.  Avitus thereafter filed claims against D'Onofrio.

Currently pending before this Court is Mr. Safer's motion: 1) to vacate the stay of his

action in state court; 2) to stay this federal action pending the conclusion of the state court action;

---

[1] "Avitus" refers to the related companies of Better Business Systems, Inc., Avitus, Inc., and Avitus Group.

and 3) to grant summary judgment in favor of Safer, dismissing Avitus' claims in this limitation action.

FACTUAL BACKGROUND

D'Onofrio is a construction company that performs various marine projects. (D'Onofrio 56.1 Stmnt[2] ¶ 3). In or about 2013, D'Onofrio entered into a contract with the Triborough Bridge and Tunnel Authority (the "Bridge Contract") to perform certain substructure and underwater work at the Marine Parkway-Gil Hodges Memorial Bridge. (Id. ¶ 4). On or about May 29, 2015, D'Onofrio purchased the tug LUCIE JO, a pushboat built in 1943 (the "LUCIE JO," or the "Vessel"). (Id. ¶ 2). The LUCIE JO was used in connection with the work being done on the Bridge Contract. (Id. ¶ 5).

On or about January 20, 2015, D'Onofrio entered into a professional employer agreement ("PEA") with Avitus, Inc. (Id. ¶ 6). Under the PEA, Avitus and D'Onofrio were to act as co-employers of the employees hired to work in connection with the Bridge Contract. (Id. ¶ 7). The PEA contained an indemnification clause in which D'Onofrio agreed "to indemnify and hold Avitus harmless from and against any and all claims, demands, damages . . . injuries, deaths, actions and causes of actions" arising from services provided by Avitus, by any employee of D'Onofrio, any non-covered employee of Avitus, or any other person affiliated with Avitus. (PEA ¶ 17(a), Ex. A to Sandercock Decl.[3] at 3).

On or about June 1, 2015, Safer was hired by D'Onofrio to serve as captain of the LUCIE JO. (D'Onofrio 56.1 Stmnt ¶ 8; Avitus Mem.[4] at 4). Avitus claims that Mr. Safer was a

---

2 Citations to "D'Onofrio 56.1 Stmnt" refer to D'Onofrio's Response to Edward Safer Jr.'s Local Rule 56.1 Statement and Additional Statement of Undisputed Facts, dated November 1, 2018, ECF No. 70.
3 Citations to "Sandercock Decl." refer to the Declaration of John Sandercock, dated March 8, 2018, ECF No. 29.
4 Citations to "Ativus Mem." refer to the Memorandum in Opposition to the Motion to Vacate Stay of Safer's Personal Injury Actiom in State Court and Dismiss the Indemnity Claim of Claimant Avitus, dated November 1, 2018, ECF No. 72.

"worksite employee" covered by the PEA until his employment terminated in November 2015.
(Avitus Mem. at 4).  According to Mr. Safer, he was working aboard the LUCIE JO on
September 10, 2015, when he injured his left knee due to the poor condition of the 70-year old
Vessel.  (Safer Mem.[5] at 2; D'Onofrio 56.1 Stmnt ¶ 9; Avitus Mem. at 4).  According to
D'Onofrio, Safer was subsequently terminated on November 16, 2015 for cause (D'Onofrio 56.1
Stmnt ¶ 9); Safer claims he was terminated after a dispute with D'Onofrio over the condition of
the Vessel.  (Safer Mem. at 1-2).  As a Jones Act seaman, Mr. Safer thereafter sought
maintenance and cure from D'Onofrio and from Avitus, as co-employer with D'Onofrio
pursuant to the PEA.  When D'Onofrio and Avitus refused to pay maintenance and cure,
claiming that Safer had been terminated for cause, Safer commenced an action against both
defendants in Kings County Supreme Court on March 17, 2016, seeking not only personal injury
damages under the Jones Act and under the doctrine of unseaworthiness, but also seeking
punitive damages for non-payment of maintenance and cure.

On July 20, 2016, D'Onofrio commenced this federal Limitation of Liability Act action
to limit D'Onofrio's liability for Mr. Safer's injury to the value of the Vessel, which Mr. Safer
asserts is estimated by D'Onofrio to be only $30,000.00.  D'Onofrio sought a stay of the state
court proceedings to allow this limitation action to be determined first.  The district court granted
the stay on September 1, 2017, and ordered Safer and all other claimants to file answers to the
limitation complaint.  Both D'Onofrio and Avitus filed answers and claims against Safer on
October 16, 2017.  Avitus filed a claim for indemnification and contribution against D'Onofrio
in this action, alleging that in the event that Safer recovered damages from Avitus as a co-

---

[5] Citations to "Safer Mem." refer to the Memorandum of Law of Claimant Edward Safer, Jr., In Support of
His Motion to Vacate the Stay of His Personal Injury Action In State Court and Dismiss the Indemnity Claim of
Claimant Avitus, dated August 28, 2018, ECF No. 68.

employer, "Avitus is entitled to contractual indemnification, contribution, or indemnity from [D'Onofrio] for any and all liability that it may be found to have to Mr. Safer." (D'Onofrio 56.1 Stmnt ¶ 14; Avitus Mem. at 6). D'Onofrio then filed a counterclaim against Avitus. (Avitus Mem. at 5).

On December 19, 2017, this Court held an initial conference and ordered depositions to occur before February 26, 2018. Mr. Safer was deposed on February 13, 2018 and on March 16, 2018, the parties consented to having the case assigned to the undersigned for all purposes. Mr. Safer now moves for an Order lifting the stay that is enjoining his state court action and entering a stay of this federal limitations action. Mr. Safer also seeks to dismiss Avitus' claim of contractual indemnity, arguing that it is not properly subject to limitation.

DISCUSSION

A. The Limitations Act

This federal action was commenced pursuant to the Limitation of Liability Act of 1851 ("Limitation Act" or "Act"), 46 U.S.C. § 30501 et seq. This statute, which courts have described as enacted "to encourage ship building and to induce capitalists to invest money in this branch of industry," Lewis & Clark Marine, Inc., 531 U.S. 438, 446 (2001); see also The Main v. Williams, 152 U.S. 122, 128 (1894); In the Matter of the Complaint of Henry Marine Service, Inc., 136 F. Supp. 3d 401, 411 (E.D.N.Y. 2015), allows the owner of a vessel to seek to limit its liability for claims of damages in federal court. In re Complaint of Dammers & VAnderheid & Scheepvaart Maats Christina B.V., 836 F.2d 750, 753 (2d Cir. 1988); North East Marine, Inc. v. Boody, No. 09 CV 5600, 2012 WL 4482794, at * 4 (E.D.N.Y. July 5, 2012), report and recommendation adopted, No. 09 CV 5600, 2012 WL 4482772 (E.D.N.Y. Sept. 27, 2012). By

its terms, the Act limits the liability of a vessel owner to "the value of the vessel and pending

freight," 46 U.S.C. § 30505(a), when the claims brought against the owner arise from "injury by

collision . . . done, occasioned, or incurred, without the privity or knowledge of the owner." 46

U.S.C. § 30505(b).  The federal courts have exclusive jurisdiction over proceedings under the

Act, with the goal of protecting the ship owner by limiting the owner's liability and protecting

the claimants by preserving whatever assets are available and ensuring their equitable

distribution on a pro rata basis.  In re Complaint of Dammers & Vanderheid & Scheepvaart

Maats Christina B.V., 836 F.2d at 754-55.

The Limitations Act contains a six-month statute of limitations during which time the

vessel owner must file its petition.  46 U.S.C. § 30511(a); see North East Marine, Inc. v. Boody,

2012 WL 4482794, at *4.  Once the limitations proceeding is commenced, Rule F of the

Supplemental Admiralty and Maritime Claims Rules of the Federal Rules of Civil Procedure sets

forth the procedures for the district court to follow.  See Lewis & Clark Marine, Inc., 531 U.S. at

448.  Pursuant to Rule F, the court must first secure the value of vessel or owner's interest by

requiring the deposit of "an amount equal to the value of the owner's interest in the vessel . . ."

or in an amount set by the court for the benefit of the claimants.  46 U.S.C. § 30511(b); see North

East Marine, Inc. v. Boody, 2012 WL 4482794, at *4.  Once the security has been deposited, "all

claims and proceedings against the owner related to the matter in question shall cease," 46

U.S.C. § 30511(c), including any actions brought in state court against the owner for damages.

North East Marine, Inc. v. Boody, 2012 WL 4482794, at *4; see also Lewis & Clark Marine,

Inc., 531 U.S. at 448 (stating:  "The district court secures the value of the vessel or owner's

interest, marshals claims, and enjoins the prosecution of other actions with respect to the

claims").

The rule then provides that the district court conduct proceedings to allocate funds among the claimants, a process known as a *concursus*. The Supreme Court in <u>Lewis & Clark Marine, Inc.</u>, described the *concursus* process as follows: "In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants." 531 U.S. at 448. <u>See also</u> In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V., 836 F.2d at 755. Since the court is sitting in admiralty without a jury, it is the court that determines whether there was any negligence and whether it occurred without the privity and knowledge of the vessel owner. <u>See</u> In re L& G Fisheries LLC, No. 14 CV 1548, 2015 WL 7422225, at *5 (E.D.N.Y. Aug. 10, 2015) (citing <u>In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V.</u>, 836 F.2d at 754; <u>In re Petition of Atlantis Fishing Fleet Corp.</u>, No. 01 CV 8263, 2004 WL 3704912, at *2 (E.D.N.Y. Mar. 22, 2004)).

Numerous courts have recognized the inherent tension between the provisions of the Limitation Act, which confers exclusive jurisdiction in the federal courts, and the claimants' right to a jury trial. <u>In re Petition of Atlantis Fishing Fleet Corp.</u>, 2004 WL 3704912, at *2 (collecting cases). Title 28, Section 1333, of the United States Code, which is the statute that confers original jurisdiction of all admiralty and maritime cases upon the federal courts, contains a "saving to suitors" clause, which provides an exception to federal jurisdiction to allow a plaintiff to pursue his common law admiralty claims in state court, where jury trials are available. 28 U.S.C. § 1333; <u>see</u> In re Henry Marine Service, Inc., 136 F. Supp. 3d 401, 412 (E.D.N.Y. 2015). As the Second Circuit in <u>Dammers</u> explained: "The savings clause . . . . 'is for the benefit of suitors, plaintiff and defendant, when the plaintiff in a case of concurrent

jurisdiction chooses to sue in the common law courts, so giving himself and the defendant all the advantages which such tribunals can give to suitors in them.'" In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V., 836 F.2d at 754 n.4 (quoting Waring v. Clarke, 46 U.S. 441, 460 (1847)).

In attempting to reconcile the saving to suitors clause provision allowing suitors to choose their remedies with the Limitations Act's provision giving vessel owners the right to seek limitation of liability in federal court, the Supreme Court, in Lewis & Clark Marine, Inc., held that the district court has "discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court" where the district court is satisfied "that the vessel owner's right to seek limitation will be protected." 531 U.S. at 450.

The courts have identified two situations where a *concursus* is unnecessary and a stay of a Limitation Act proceedings is appropriate to allow the claimants to proceed with their common law claims in other forums: 1) where "the aggregate of the claims does not exceed the value of the limitation fund, i.e., the value of the vessel and its cargo," In re L&G Fisheries LLC, No. 14 CV 1548, 2015 WL 7422225, at *2 (E.D.N.Y. Aug. 10, 2015); and 2) where "there is a single claimant" who stipulates that "his or her claim does not exceed the value of the limitation fund," and that "the federal court retains exclusive jurisdiction over limitation of liability issues." Id.; see also In re Henry Marine Service, Inc., 136 F. Supp. 3d at 413 (quoting Lewis & Clark Marine, Inc., 531 U.S. at 448-49 (stating that a stay of a Limitations Act proceeding is appropriate "when a lone claimant brings an action seeking an amount in excess of the limitation fund," or "if the limitation fund, which represents the value of the vessel. . . exceeds the aggregate of the claims to be made against it . . . .")).

In the first enumerated exception, there is no need for a *concursus* because the claimants are not competing over a limited fund, and in the second situation, the claimant is allowed to pursue his or her personal injury action in state court because there are no other claimants seeking to share in the limited fund and the plaintiff agrees to allow the federal court to determine the vessel owner's rights. See North East Marine, Inc. v. Boody, 2012 WL 4482794, at *10 (citing cases). The Second Circuit has also allowed claimants whose claims exceed the fund to proceed in state court provided that they stipulate to preserve the owner's limitation rights. In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V., 836 F.2d at 756.

B. Analysis

In this case, the claimant, Mr. Safer, seeks to vacate the stay of his state court personal injury action on the grounds that he is the lone claimant here, suing for Jones Act negligence, unseaworthiness, maintenance and cure. (Safer Mem. at 8). Both D'Onofrio and Avitus object to the motion to lift the stay. Although Avitus has filed a claim against D'Onofrio for contractual indemnity based on the PEA, Safer argues that Avitus' claim is not subject to limitation under the Limitation Act because it arises from a personal contract between D'Onofrio and Avitus. (Id. (citing Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic, 229 F.3d 397, 403-04 (2d Cir. 2000))); see also The Fred Hasler, 65 F.2d 589 (2d Cir. 1933). D'Onofrio distinguishes the cases cited by Safer and argues that the PEA is not a personal contract; rather, the claims brought by Avitus are for common law contribution and indemnity in addition to the contractual claims. (D'Onofrio Mem.[6] at 4-6). Avitus disagrees with D'Onofrio's analysis as to

---

[6] Citations to "D'Onofrio Mem." refer to the Memorandum of Law By D'Onofrio General Contractor Corp. In Opposition to Clamant Edward Safer, Jr.'s Motion to Vacate the Stay of His Personal Injury Action in State Court and to Dismiss the Indemnity Claim of Avitus, dated November 1, 2018, ECF No. 71.

whether the PEA is a personal contract, but argues alternatively that the stay should not be lifted because Safer has waived his right to return to the state court and he does not fall under the sole claimant exception to the Limitations Act provisions. (Avitus Mem. at 5-8).

### 1. Contribution and Indemnification Claims

In determining whether the stay should be lifted and a *concursus* is unnecessary in this case, the Court must first determine whether the case falls within one of the two exceptions set out in <u>Lewis</u>, either of which require the "exclusive jurisdiction of the admiralty court" to "give way." <u>In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V.</u>, 836 F.2d at 755.

There appears to be no dispute that the first exception – namely, that the aggregate amount of the claims are less than the limitation fund – does not apply, since Safer is seeking at least $6,300,000.00[7] in damages and the value of the vessel is, according to D'Onofrio, only $30,000. (Safer Mem. at 2 (citing 11/11/16 D'Onofrio Mot.[8] ¶ 5); Compl.[9] at 3). With respect to the second situation – namely, is this a sole claimant case or are there multiple claimants – the parties disagree as to the role of the third-party claims.

---

[7] Safer brings claims for negligence under the Jones Act, unseaworthiness, and for maintenance and cure. (See Answer filed by Safer, dated October 17, 2017, ECF No. 10 ("Safer Ans.")). According to Safer's Answer, he seeks "$3,000,000.00 on the [Jones Act negligence] cause of action . . . $3,300,00.00 on the [unseaworthiness] cause of action . . . [and] on the [maintenance and cure] cause of action, judgment against the defendant, in an amount to be determined upon trial of this action, together with punitive damages, interest, costs, disbursements, attorneys' fees, and different relief as may be just, proper, and equitable." (Id. at 7). D'Onofrio and Safer dispute whether the maintenance and cure claims have been settled. (Reply Memorandum of Law of Claimant Edward Safer, Jr., in Support of His Motion to Vacate the Stay of His Personal Injury Action in State Court and Dismiss the Indemnity Claim of Claimant Avitus, dated November 15, 2018, ECF No. 74 ("Safer Reply") at 5, n.2). Safer insists that he still has a punitive damages claim against D'Onofrio for failing to pay maintenance and cure and that D'Onofrio cut off Safer's benefits shortly before the briefs were filed even though no doctor had concluded that Safer had reached maximum cure. (Id.) As such, it appears that the maintenance and cure claims are still in dispute and Avitus, if it is determined to be a co-employer, could be held liable for damages stemming from a failure to pay.

[8] Citations to "11/11/16 D'Onofrio Mot." refer to D'Onofrio's Motion to Compel, dated November 11, 2016, ECF No. 4.

[9] Citations to "Compl." refer to the Complaint filed by D'Onofrio, filed July 20, 2016, ECF No. 1.

As Judge Mann noted in North East Marine, Inc. v. Boody: "The Circuits are split as to whether third-party claims for contribution and indemnification constitute claims that are derivative of the claims of the injured party or whether they constitute separate claims." 2012 WL 4482794, at *10. The Second Circuit in Dammers adopted the majority view that third-party claims for contribution and indemnification and attorneys' fees "all constitute separate claims sufficient to create a multiple-claimant situation requiring a *concursus*." North East Marine, Inc. v. Boody, 2012 WL 4482794, at *10 (citing In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V., 836 F.2d at 757 (noting that "As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus*")); see also Beiswenger Engers. Corp. v. Carletta, 86 F.3d 1032, 1042 (11th Cir. 1996) (holding that in determining a multiple claims situation, the court must consider separately potential claims for indemnity or contribution from the vessel owner's codefendants, such that "the possibility of claims from [defendant's] state court co-defendants creates a multiple claims situation").

Safer relies on the holding in Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic, to argue that Avitus' claims for indemnification and contribution against D'Onofrio fall outside the Dammers ruling. In Mediterranean Shipping, the Second Circuit held that "[p]ersonal contracts entered into by a vessel owner or bareboat charterer are not subject to limitation under the Act." 229 F.3d at 403 (citing American Car & Foundry Co. v. Brassert, 289 U.S. 261, 264 (1933)). As the court explained, "this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." Id.

(quoting 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15-7, at 314 (2d Ed. 1994)).

Thus, when the vessel owner warrants the seaworthiness of its vessel, the court in <u>Mediterranean Shipping</u> held that this constitutes a "personal contract . . . not entitled to limitation under the Act." <u>Id.</u> (citing <u>Pendleton v. Benner Line</u>, 246 U.S. 353, 355-56 (1918)).

Here, D'Onofrio and Avitus are parties to a professional employer agreement, entered into on or about January 20, 2015. (D'Onofrio 56.1 Stmt ¶ 6). According the PEA, D'Onofrio and Avitus were "co-employers of employees" hired to work on D'Onofrio's Bridge Contract. (<u>Id.</u> ¶¶ 4, 7). According to Avitus, its role was to process the payroll and pay taxes for D'Onofrio's employees, and it agreed to maintain workers' compensation insurance intended to cover the employees. (Avitus Mem. at 2 (citing Sandercock Decl., Ex. 1)). D'Onofrio was also required to purchase liability insurance to cover its premises and operations, including "blanket contractual and personal injury liability." (<u>Id.</u> at 3 (citing Sandercock Decl., Ex. 3)). The PEA states that D'Onofrio agrees "to indemnify and hold Avitus Group harmless from and against any and all claims, demands, damages (including liquidated, punitive and compensatory), injuries, deaths, actions and causes of actions, . . . losses and liabilities of whatever nature (including liability to third parties, . . . arising from the products and services provided by [D'Onofrio], the actions of any Employee . . . or of any other individual affiliated with [D'Onofrio]." (<u>Id.</u> at 3; Sandercock Decl., Ex. 1).

Safer argues that as in the <u>Mediterranean Shipping</u> case, the PEA constitutes a "personal contract" that excludes the Avitus claims from limitation. (Safer Mem. at 9). Thus, Safer contends that he is the "sole claimant" and he should be allowed to proceed with his action in state court. (<u>Id.</u> at 8). He also moves for summary judgment to dismiss Avitus' claims from this limitation action. (<u>Id.</u> at 9).

D'Onofrio contends that this case is distinguishable from <u>Mediterranean Shipping</u> because there the court focused on the provision in the contract between the vessel owner and the charter parties which warranted the seaworthiness of the vessel. (D'Onofrio Mem. at 5 (citing <u>Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic</u>, 229 F.3d at 403)). Here, by contrast, the PEA does not include any express warranty of seaworthiness by the vessel owner and therefore, D'Onofrio takes the position that the PEA is not a "personal contract." (D'Onofrio Mem. at 5). Moreover, D'Onofrio argues that Avitus has also raised common law claims for contribution and indemnification against D'Onofrio, which courts in the Second Circuit have held are sufficient to create a multi-claimant scenario that requires a *concursus*. <u>See, e.g.</u>, <u>In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V.</u>, 836 F.2d at 757; <u>North East Marine, Inc. v. Boody</u>, 2012 WL 4482794, at *10.

Avitus agrees with Safer's analysis that the PEA is a personal contract and D'Onofrio may not limit its liability insofar as Avitus has raised claims of contractual indemnification. (Avitus Mem. at 8). However, Avitus notes that, in the event that it is unable or chooses not to pursue its contractual remedies, it has common law claims for contribution and implied indemnification, which fall within the limitations action and the injunction entered by the district court. (<u>Id.</u>) Avitus further argues that even if the case remained in federal court, Safer could request the Court to empanel a jury to decide the negligence issues in the limitation proceeding. (<u>Id.</u> at 10 (citing <u>Red Star Towing & Transp. Co., Inc. v. "Ming Giant</u>," 552 F. Supp. 367, 371 (S.D.N.Y. 1982) (empaneling a jury to hear a seaman's injury claim, holding that "[w]here claims with independent jurisdictional basis normally carrying a jury right, such as plaintiff's Jones Act claim, are joined with admiralty claims arising out of the same transaction or occurrence, all claims may be tried to a jury"))). <u>See also</u> <u>In re Moran Towing Corp.</u>, 984 F.

Supp. 2d 150 (S.D.N.Y. 2013) (holding that the jury would render a special verdict on the Jones

Act personal injury claims and the court would determine the limitation of liability issues);

Complaint of Poling Transp. Co., 776 F. Supp. 779 (S.D.N.Y. 1991) (empaneling a jury to

determine state law claims, ruling that he would determine the admiralty issues); Berkley Curtis

Bay Co., 569 F. Supp. 1491, 1493 (S.D.N.Y.), aff'd sub nom B.C. Bay Co. v. Am. Dredging Co.,

752 F.2d 1431 (2d Cir. 1983).  Finally, Avitus argues that Safer has waived his right to return to

state court by proceeding with discovery in this case for more than a year, simply because he

does not want to comply with the Court's discovery order.[10]

Although Mr. Safer seeks to have the Court dismiss the Avitus claim for indemnification

on the grounds that it falls within the "personal contract" holding of Mediterranean, the Court

cannot ignore the fact that claims have been made against Avitus by both D'Onofrio and Safer

that could result in Avitus seeking common law indemnification or contribution from D'Onofrio.

As the Second Circuit held in Dammers, "As long as there is a potential set of circumstances in

which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect

of claims for indemnification should constitute a multiple claimant situation necessitating a

concursus."  In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V.,

836 F.2d at 757.

In response, Safer submits that even if the Court determines that the PEA is not a

personal contract and regards the action as involving multiple claims, the Court should

nonetheless reach the conclusion reached in Dammers and allow Safer to proceed in state court

---

[10] On October 15, 2018, this Court granted D'Onofrio's motion to compel certain discovery from Safer. (Order dated October 15, 2018, ECF No. 69).  Avitus contends that Safer's recent motion to lift the injunction and allow him to return to state court was filed in an effort to avoid compliance with the Court's Order.  (Avitus Mem. at 5-6).  Avitus has not submitted any case authority suggesting that a claimant is required to move to lift a Limitations Act stay within any particular time period or that failure to do so constitutes a waiver.  Accordingly, the Court is not persuaded that Safer has waived his right to bring this motion.

given his willingness to stipulate to conditions that would protect the vessel owner's rights.

Specifically, in <u>Dammers</u>, the parties entered into a stipulation in which the claimants agreed: 1) to have the issues relating to limitation of liability heard in the federal court; 2) not to seek any judgment or ruling in state court relating to the limitation of liability; 3) not to seek to enforce any judgment in excess of the amount of the value of the limitation pending the adjudication of the limitation in federal court; 4) that if the petitioners were held responsible for attorneys' fees and costs assessed against them by a co-liable defendant or party seeking indemnification, then those claims would have priority over the claims of the claimants. <u>In re Complaint of Dammers & Vanderheid & Scheepvaart Maats Christina B.V.</u>, 836 F.2d at 753-54.

The district court in <u>Dammers</u>, relying on the dictum of Judge Hand in <u>W.E. Hedger Transportation Corp. v. Gallotta</u>, 145 F.2d 870 (2d Cir. 1944), held that a claimant seeking to proceed by stipulation must

   a) file his claim in the limitation proceeding;

   b) where a stipulation for value has been filed in lieu of the transfer of the ship to a trustee, concede the sufficiency in amount of the stipulation;

   c) consent to waive any claim of *res judicata* relevant to the issue of limited liability based on any judgment obtained in the state court;

   d) concede petitioner shipowner's right to litigate all issues relating to limitation in the limitation proceeding.

<u>Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.</u>, 660 F. Supp. 153, 156 (S.D.N.Y. 1987). The Second Circuit in reviewing the district court's test, agreed that "the use of such stipulations to 'preserv[e] common law remedies under the saving to suitors clause' is well established." 836 F.2d at 758 (citing cases). In approving the stipulation with modification, the court noted that what was significant was that the stipulation embodied the

intention of the claimants that the shipowner could not be exposed to liability in excess of the limitation fund in the event there was a judgment or recovery *in any state court action*. Id. at 759.

Mr. Safer contends that this Court should follow the procedure approved in Dammers, noting that in his motion papers, Safer claims he has adopted "the very same stipulations," and that "[n]either Avitus nor D'Onofrio contends that the stipulations are insufficient." (Safer Reply at 4). Safer represents that he is willing to adopt the following stipulations: 1) "he waives any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in his action in state court"; 2) he concedes that "D'Onofrio has the right as the vessel owner to litigate all issues relating to limitation in the limitation proceeding before this Court; and 3) he "will not seek to enforce any judgment he may obtain against D'Onofrio in his state court action in excess of a limitation fund, if limitation is granted, pending the adjudication of Limitation of Liability in the Eastern District of New York." (Safer Mem. at 8).

With respect to Avitus' argument that Safer can have his jury trial in federal court, Safer contends that the cases relied on by Avitus are distinguishable in that they were decided in the context of requests by the claimants for jury trials in the federal limitation action, and not, as here, where Safer seeks to have his claim decided in state court. (Safer Reply at 8). The only case on point is In re Complaint of Poling Transportation Corp., where the claimant sought to pursue its claim in state court, but the federal district court noted that the claimant had failed to offer to provide the protective stipulations approved by the Second Circuit in Dammers. 776 F. Supp. at 783. The court noted that when adequate stipulations are made, the court "must take all steps necessary to assure that claimants are allowed to pursue their common law remedies in accordance with the 'saving to suitors' clause." Id. Safer argues that the stipulations he has

offered qualify him as the lone claimant and would allow the court to lift the stay so that he could proceed in state court. (Safer Reply at 9).

Courts have held that "before lifting an injunction on a state court action, the federal court must ensure 'that a vessel owner's right to seek limitation of liability is protected.'" North East Marine v. Broody, 2012 WL 4482794, at *9 (citing Lewis & Clark Marine, Inc., 531 U.S. at 455)). The stipulation offered by Safer here is insufficient to guarantee that protection. Safer is willing to stipulate that he will not enforce any judgment he may obtain against D'Onofrio "*in his state court action* in excess of the limitation fund, if limitation is granted, pending the adjudication of Limitation of Liability in the Eastern District of New York." (Safer Mem. at 7-8) (emphasis added). The Second Circuit has made clear that such a stipulation is insufficient. In Dammers, the court held that a stipulation agreeing to limit the liability "in '*the* State Court action'" was insufficient as the "reference presumably included [claimants'] existing state court action against . . . the shipowners, but might not include the actions instituted against other parties or any other actions instituted after the submission of the stipulation." 836 F. 2d at 759 (emphasis in original). The Second Circuit noted that, in approving a stipulation agreeing not to seek damages in excess of the limitation fund in "*any* State Court *actions,*" the change to cover any potential state court proceeding was "significant in that it embodies the claimants' intention that the shipowners shall not, in any set of circumstances, be exposed to liability in excess of the limitation fund." Id.

Furthermore, Safer has previously sought to have this Court "compel D'Onofrio and Avitus, jointly and severally, to provide . . . attorneys' fees incurred by claimants in connection" with the motion for maintenance and cure." (Safer 1/29/18 Mem. at 10-11). The Second Circuit has held that it is "well settled that the potential for claims for attorneys' fees or costs against a

shipowner by a claimant or a third party creates a multiple claimant situation necessitating a *concursus*." Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F. 2d at 756 (citing S&E Shipping Corp. v. Chesapeaka & O. Ry. Co., 678 F. 2d 636 (6th Cir. 1982) (denying claimants' request to proceed in state court because potential claims for attorneys' fees brought by the co-defendant against the shipowner "could produce two competing claims greater than the limitation amount and thus require a *concursus*" and that allowing claimant to proceed in state court therefore "would be inconsistent with the purposes of the Limitation Act")). In Dammers, the court found that the claimants' stipulation was sufficient to mitigate this issue, as the stipulation stated that any claims for attorney's fees and costs would have priority over the claims of the claimants. Id. Safer's stipulation contains no such agreement that any claims for attorney's fees and costs brought either by Safer or by Avitus would take priority over Safer's claim.

Safer's proffered stipulation is missing certain required elements of the stipulation approved in Dammers. In the absence of a stipulation that tracks the requirements of Dammers, Safer's proposal fails to adequately preserve the petitioner's limitation rights. As claimant's claim exceeds the value of the Vessel and its cargo, and his stipulation is insufficient to create the equivalent of a single-claimant action, Safer's claim fails to fall within the specific circumstances within which a federal court stays a limitation proceeding to allow the claimant to proceed in state court.

 The Court therefore denies Safer's motion to vacate the stay of his personal injury action in state court. The Court finds it unnecessary to determine the role of the PEA at this time, as it finds that claimant cannot prove that his action falls within either of the "saving to suitors" clause exceptions.

2. <u>Safer's Motion to Dismiss Avitus from the Limitation Action</u>

Safer also moves for summary judgment, seeking to dismiss Avitus from the federal

limitation action, arguing that since Avitus' claim is for indemnity pursuant to contract, it is not

subject to limitation under the Act.


A. <u>Summary Judgment Standard</u>

It is well-settled that a party moving for summary judgment has the burden of

establishing that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986); <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir. 1990).  Since summary judgment is an

extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, <u>see</u>

<u>Egelston v. State Univ. College at Geneseo</u>, 535 F.2d 752, 754 (2d Cir. 1976); <u>Gibralter v. City</u>

<u>of New York</u>, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary

judgment unless it is clear that all of the elements have been satisfied.  <u>See</u> <u>Auletta v. Tully</u>, 576

F. Supp. 191, 194-95 (N.D.N.Y. 1983), <u>aff'd</u>, 732 F.2d 142 (2d Cir. 1984).  In addition, "'the

inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable

to the party opposing the motion.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475

U.S. 574, 587-88 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'"  <u>Phillips v. Kidder, Peabody & Co.</u>, 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegations or denials

of his pleading." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256. A party opposing summary

judgment may not "merely. . . assert a conclusion without supplying supporting arguments or

facts." <u>BellSouth Telecomms., Inc. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. l996)

(internal quotations omitted). The party must set forth "concrete particulars" showing that a trial

is necessary. <u>Nat'l Union Fire Ins. Co. v. Deloach</u>, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989).

Indeed, "the mere existence of <u>some</u> alleged factual dispute between the parties" alone will not

defeat a properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial

court's task at the summary judgment motion stage of the litigation is carefully limited to

discerning whether there are any genuine issues of material fact to be tried, not to deciding

them.'" <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 65 (2d Cir. 1995) (quoting <u>Gallo v. Prudential</u>

<u>Residential Servs., L.P.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).


B. <u>Analysis</u>

In essence, Safer's argument in support of his motion to dismiss Avitus from the

limitation action is based on the same arguments raised in support of his request to lift the stay –

namely, that Avitus' claim against D'Onofrio is not subject to the Limitations Act because it

arises out of a personal contract executed by D'Onofrio. (Safer Mem. at 8 (citing <u>Mediterranean</u>

<u>Shipping Co. S.A. Geneva v. POL-Atlantic</u>, 229 F.3d at 403-04)). Safer argues that the

Limitation Act is designed to protect vessel owners from claims for contracts made and torts

committed without the owner's privity or knowledge. (<u>Id.</u> at 9). When the owner enters into a

contract through a management-level employee, the owner cannot claim that it was done without

his knowledge.  (Id. at 9-10 (citing Great Lakes Towning Co. v. Mill Transp. Co.. 155 F. 11 (6th Cir. 1907))).  Safer argues that here Avitus entered into a contract with D'Onofrio that contained an indemnity provision; thus, it is a personal contract entered into knowingly by D'Onofrio that falls outside the purview of the Limitation Act.  (Id. at 10).

Moreover, Safer argues that his unseaworthiness claim can only be brought against the vessel owner or operator.  (Safer Reply at 5).  According to plaintiff, the discovery produced to date demonstrates that Avitus is not the owner or operator of the LUCIE JO and therefore cannot be held liable for any seaworthiness claim.  (Id.)  As for his claims of maintenance and cure and Jones Act negligence claim, Safer argues that these claims can only be brought against a seaman's employer.  (Id. (citing Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 169-170 (2d Cir. 1973))).  Safer argues that if Avitus is correct and it was merely a payroll company and not Safer's employer, then Safer would have no claims against Avitus and Avitus would not have any claims for indemnification or contribution against D'Onofrio.  (Id.)

The problem with Safer's argument is that D'Onofrio has not conceded the argument that Avitus was not an "employer."  Indeed, in its Rule 56.1 Statement filed in response to Safer's 56.1 Statement, D'Onofrio clearly states that under the PEA, "D'Onofrio and Avitus acted as co-employers. . . ."  (D'Onofrio 56.1 Stmnt ¶ 7).  Not only is the employer status of Avitus in dispute, but as Avitus argues, Safer has cited no case authority to support his motion to dismiss Avitus' claims against D'Onofrio.  (Avitus Mem. at 8).  Until the status of Avitus as co-employer is determined, there is the possibility that Avitus could be held liable for any damages found to be owing under Safer's Jones Act claim or under his claims for maintenance and cure. As this question remains a disputed material issue of fact for the trier of fact to decide, the Court denies Safer's motion for summary judgment.

<u>CONCLUSION</u>

The Court denies Safer's motion to vacate the stay of his action in state court and denies the request to stay this federal action pending the conclusion of the state court action. The Court further denies Safer's motion for summary judgment.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 26, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York